IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

SOUTHERN INDUSTRIAL MECHANICAL
MAINTENANCE COMPANY, LLC,

    Plaintiff,

v.                                              No. 13-2523

FREDDIE J. SWAFFORD, SR.,

    Defendant.

_____

ORDER GRANTING PLAINTIFF'S MOTION TO REMAND
_____

Before the Court is a Motion to Change Venue filed by Defendant, Freddie Swafford ("Defendant") (Docket Entry ("D.E.") 9) and a Motion to Remand by Plaintiff, Southern Industrial Mechanical Maintenance Company, LLC ("SIMMCO") (D.E. 13). Based on the following reasons, the Court **GRANTS** Plaintiff's Motion to Remand and **DENIES** Defendant's Motion to Change Venue as moot.

I.  BACKGROUND

SIMMCO sued Swafford in Haywood County, Tennessee Chancery Court asserting that he breached various legal obligations to SIMMCO by abusing his access to trade secrets and confidential information and usurping ongoing and future business opportunities. (D.E. 1-2.) SIMMCO is a Tennessee limited liability company with its principal place of business in Brownsville, Tennessee operating as an industrial maintenance contractor in Tennessee and surrounding states. Defendant was employed by SIMMCO as an on-site supervisor at Nucor Steel in Mississippi County, Arkansas until late 2012. Prior to reassignment to Nucor's facilities

in 2012, Swafford resided exclusively at his family's home in Reagan, Tennessee and worked at an industrial site in Kentucky. While working for SIMMCO at the Arkansas site, Defendant stayed in a nearby home in Steele, Missouri owned by SIMMCO's principal owner, David Blurton. Throughout this time, Swafford's wife and son remained at the house in Tennessee. Swafford either resigned or was terminated by SIMMCO at some point in late 2012, after which he continued to work at Nucor Steel, albeit not for SIMMCO. Defendant and his wife purchased a home in nearby Cooter, Missouri on January 10, 2013 following his eviction from Blurton's home in Missouri on January 5, 2013.

Blurton filed suit against Swafford in state court in February, 2013 alleging the nonpayment of certain promissory notes. In that action, Defendant was served with process and received correspondence at either his previous Steele, Missouri address or the Cooter, Missouri home. The instant suit was initiated by SIMMCO on May 31, 2013. At the time the complaint was filed, Swafford appears to have been residing in Cooter, while his wife and son were still in the Tennessee house. Swafford removed the case to this Court on July 15, 2013 (D.E. 1) and filed a motion to transfer venue to the Eastern District of Arkansas, Jonesboro Division (D.E. 9). In its motion to remand, SIMMCO asserted that the Court lacked diversity jurisdiction under 28 U.S.C. § 1332 because Defendant was actually a citizen of Tennessee—not Missouri. (D.E. 12.) The Court agrees that Swafford was in fact a citizen of Tennessee at the relevant times in this suit.

## II.  RELEVANT AUTHORITY

Where a case is initiated in state court, the party seeking removal has the burden of proving the district court has diversity jurisdiction. Everett v. Verizon Wireless, Inc., 460 F.3d

818, 829 (6th Cir. 2009); see also Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit, 874 F.2d 332, 339 (6th Cir. 1989) ("The party seeking removal bears the burden of establishing its right thereto."). The removing party must show that there is "complete diversity of citizenship both at the time the case is commenced and at the time the notice of removal is filed." Jerome-Duncan, Inc. v. Auto-By-Tel, LLC, 176 F.3d 904, 907 (6th Cir. 1999) (citing Easley v. Pettibone Michigan Corp., 990 F.2d 905, 908 (6th Cir. 1993)). Pursuant to Rule 3 of the Federal Rules of Civil Procedure, a civil case is commenced when the complaint is filed. Thus, for a court to have diversity jurisdiction under § 1332(a), the removing party must show (1) an amount in controversy exceeding $75,000 and (2) complete diversity on both sides of the dispute at both commencement and removal. See 28 U.S.C. § 1332(a).

One way diversity is achieved is when the parties are "citizens of different States." Id. For this purpose, it is well settled that citizenship under 28 U.S.C. § 1332(a) means "domicile rather than residence." Stifel v. Hopkins, 477 F.2d 1116, 1120 (6th Cir. 1973); see also Von Dunser v. Aronoff, 915 F.2d 1071, 1072 (6th Cir. 1990); Napletana v. Hillsdale College, 385 F.2d 871, 872–73 (6th Cir. 1967). While the two principles generally align, a person can actually "reside in one place but be domiciled in another." Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48, 109 S. Ct. 1597, 104 L. Ed. 2d 29 (1989).

Domicile in a particular state requires a person's physical presence there coupled with "the intention to make his home there indefinitely or the absence of an intention to make his home elsewhere." Stifel, 477 F.2d at 1120 (citing Gilbert v. David, 235 U.S. 561, 569–70, 35 S. Ct. 164, 59 L. Ed. 360 (1915); Gallagher v. Phila. Transp. Co., 185 F.2d 543, 547–48 (3d Cir. 1950)); see also 13E Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3612 (3d ed. 2013) ("Domicile . . . has both a physical and mental dimension and is more than an

3

individual's residence."). Physical presence and an intention to remain indefinitely are both indispensible requirements of domicile which must be evinced simultaneously. See Kaiser v. Loomis, 391 F.2d 1007, 1009–10 (6th Cir. 1968); see also Mitchell v. United States, 88 U.S. 350, 353, 22 L. Ed. 584 (1874) (stating that "[e]ither without the other is insufficient" and "[m]ere absence from a fixed home, however long continued, cannot work" to change a person's domicile). Coalescing the principals of diversity jurisdiction and domicile reveal that the removing party bears the burden of proving that the claimed diverse party in fact resides in, and intends to remain in, a state different from any opposing party.

Where the removing party is also trying to show a change in domicile, it must further overcome the "widely accepted presumption favoring the continuation of an established domicile against an allegedly newly acquired one." Ford Motor Co. v. Collins, No. 11-15011, 2011 WL 5877216, at *1 (E.D. Mich. Nov. 23, 2011) (citing Loomis, 391 F.2d at 1011; Wright & Miller, supra). This presumption

> represents the conflicts of law solution to the problem of locating the domicile of an individual who clearly has pulled up stakes with the intention of abandoning his present domicile, but either has not arrived physically at a new one or has arrived but has not yet formulated an intention to remain there for the indefinite future.

Wright & Miller, supra. The presumption must be overcome by "clear and convincing evidence" showing that the domicile has changed. Collins, 2011 WL 5877216, at *3 (citing Napletana, 385 F.2d at 872–73); see also Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 243–244 (2d Cir. 1984); Gonzalez v. Rajkumar, No. 04 Civ. 9405(RMB), 2005 WL 1593008, at *1 (S.D.N.Y. July 6, 2005). Finally, "all doubts as to the existence of federal jurisdiction must be resolved against

removal." Collins, 2011 WL 5877216, at *2 (citing Harnden v. Jayco, Inc., 496 F.3d 579, 581 (6th Cir. 2007)).

While physical presence in a place is often easily established, ascertaining one's intent to remain in that place is inherently difficult yet becomes the focal point of a court's inquiry when a party has multiple residences. See Nat'l Artists Mgmt Co. v. Weaving, 769 F. Supp. 1224, 1227 (S.D.N.Y. 1991). To make this determination, courts "must examine the entire course of [the person's] conduct in order to draw the necessary inferences as to the relevant intent." Edick v. Poznanski, 6 F. Supp. 666, 669 (W.D. Mich. 1998) (citing Hicks v. Brophy, 839 F. Supp. 948, 951 (D. Conn. 1993)). In other words, "courts must utilize a totality of the circumstances, case-by-case approach, weighing a variety of relevant factors." Collins, 2011 WL 5877216, at *2. A non-exhaustive list of these factors includes:

> the party's current residence; voter registration and voting practices; situs of personal and real property; location of brokerage and bank accounts; membership in unions, fraternal organizations, churches, clubs, and other associations; place of employment or business; driver's license and automobile registration; payment of taxes; as well as several other aspects of human life and activity.

Id. (quoting Wright & Miller, supra). No single factor is dispositive, and courts do "not focus simply on the number of contacts with the purported domicile, but also their substantive nature." Persinger v. Extendicare Health Servs., Inc., 539 F. Supp. 2d 995, 997 (S.D. Ohio 2008) (citing Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)).

### III.  ANALYSIS

Plaintiff initiated this case in state court on May 31, 2013 (D.E. 1-2) and Defendant removed it to this Court on July 15, 2013 (D.E. 1). Therefore, in order for this Court to have diversity jurisdiction, Swafford must first establish by a preponderance of the evidence that by

5

May 31, 2013 he was (1) physically present in Missouri and (2) had the intention to remain there indefinitely. The former is readily established by the facts in this case and is not disputed by SIMMCO. The intention element, however, is somewhat unclear. Additionally, because Swafford was plainly and admittedly (D.E. 19 at 2) domiciled in Tennessee at least in the recent past, he bears the additional burden of proving by clear and convincing evidence that his domicile had changed to Missouri by May 31, 2013.

Defendant first insists that SIMMCO has waived any argument that he is a Tennessee resident by reason of Blurton and their common counsel's actions in prosecuting Blurton's own case against Defendant in regards to some promissory notes. Swafford notes counsel's statements in that case claiming that service was first properly executed by serving him at the Steele, Missouri address through the Secretary of State under the Tennessee Long Arm Statute, and then by private process server at the Cooter, Missouri residence. See Tenn. Code Ann. §§ 20-2-214 & -215 (providing a method for serving "[p]ersons who are nonresidents of this state and residents of this state who are outside the state and cannot be personally served with process within this state"). However, even assuming SIMMCO is bound by counsel's statements or actions in the other suit, all that could be established is that Swafford was residing, *i.e.* physically present, in Missouri at the time. As previously discussed, residence does not equate to domicile, and the physical presence element is not in dispute.

Swafford also contends that he espoused an intention to remain in Missouri because he: (1) was living in his home in Cooter, Missouri; (2) was working full-time in nearby Mississippi County, Arkansas; (3) banked in Missouri; (4) registered his son for school in Missouri; (5) obtained a Missouri driver's license; (6) registered to vote in Missouri; and (7) had his wife and son move to the Cooter house at some point after the school year had ended. (D.E. 19 at 6–7, 9–

6

10). However, only the factors present as of May 31, 2013—the date this action was commenced—are relevant to the Court's determination.[1] Thus, factors (4)–(7) are all disregarded for none were realized until after the complaint was filed. Easley, 990 F.2d at 908 ("Under section 1441(b), diversity of citizenship must exist as to a party both at the time the state action is commenced and at the time the defendant files the petition for removal.") Swafford's son was not registered for Missouri schools until June 6 (D.E. 19-10);[2] the Missouri driver's license was not issued until July 30 (D.E. 19-12); and Defendant was not registered to vote in Missouri until July 30 (D.E. 19-13). As for the timing of his wife and son's move, Swafford states only that it was "[a]t or about that point" when his son registered for school on June 6. (D.E. 19 at 9.) Therefore, the factors indicating a Missouri domicile that should be considered based on the timing of their occurrence are that Defendant resided, owned a home, worked, and, at least partially, banked in Missouri.

The competing factors indicating that Swafford was still domiciled in Tennessee at the time the lawsuit was initiated are numerous and substantial: he owned a home and additional land in Tennessee (D.E. 13-1); his wife and son lived in the Tennessee residence;[3] he paid utilities for the Tennessee home (D.E. 13-2); his automobiles were registered in Tennessee (D.E. 13-11); he carried a Tennessee driver's license (D.E. 13-7), hunting license (D.E. 13-9), and handgun carry permit (D.E. 13-8); he was presumably registered to vote in Tennessee (D.E. 19 at 10); and he paid federal income taxes using his Tennessee address (D.E. 13-6). Swafford asserts

---

[1] Because the Court finds that diversity did not exist at the time the complaint was filed, there is no need to determine whether there was diversity at the time of removal. See Jerome-Duncan, Inc., 176 F.3d at 907 (diversity must exist at both times).

[2] Defendant makes much of the fact that his son was registered for school in Missouri on June 6, 2013—prior to service of process. (D.E. 19 at 6, 9.) However, the date in which the complaint was filed is determinative, not the date the Defendant was served or otherwise notified of the impending litigation. See Easley, 990 F.2d at 908 (diversity must exist "at the time the state action is commenced"); Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

[3] Neither party asserts any specific date on which the wife and son may have moved to Missouri. The only assertion is by Defendant that the move was "at or about" June 6, 2013. (D.E. 19 at 9.)

7

that a number of these aspects indicate only that he was "slow in effecting the formalities" of his change in domicile. (D.E. 19 at 10.) If indeed the only factors still tying Defendant to Tennessee were some lingering registrations and permits, this argument may be persuasive. However, the fact that Defendant still maintained a home in Tennessee where his wife and son continued to live with no indication of leaving prior to June 6, 2013 is highly significant.[4] Despite some definite ties to Missouri, his primary relationships with the state were employment related, and such relationships alone cannot establish domicile. See Stacey v. ZF Lemforder, No. 05-CV-72777-DT, 2007 WL 439045, at *3 (E.D. Mich. Feb. 6, 2007) (rejecting the party's evidence of domicile as only employment related); Edick, 6 F. Supp. 2d at 669–70 (finding the defendant failed to carry her burden because her "primary connection" with the state was her "business relationships").

## IV. CONCLUSION

A balancing of the relevant factors leads the Court to find that Swafford has failed to meet his burdens of establishing that he was a Missouri citizen at the time the action was commenced. Defendant was physically present in Missouri, but did not evince the requisite intent to remain there indefinitely. Thus, because there is not complete diversity between the parties, the Court lacks subject matter jurisdiction. For this reason, SIMMCO's Motion to Remand is GRANTED. As a result, Defendant's Motion to Change Venue is DENIED as moot.

---

[4] This Court and others have given special significance to the location of a married person's spouse and children. See Watson ex rel. Estate of Simon v. Herenton, No. 04-2400B, 2005 WL 2177002, at *3 (W.D. Tenn. Sept. 8, 2005) (recognizing a presumption that a married man's domicile follows his family's residence but rejecting its application due to the lack of any indication of a real marriage in that case); see also Weaving, 769 F. Supp. at 1228 (recognizing this factor carries "considerable weight"); Broadstone Realty Corp. v. Evans, 213 F. Supp. 261, 265 (S.D.N.Y. 1962) (stating that "a married man's domicile is presumed to be where his wife and family reside, if that is at a permanent home, and there is no proof of separation," and "[t]he acquisition of a new residence for occupancy during employment away from a permanent home is insufficient to rebut that presumption").

IT IS SO ORDERED this 24th day of September, 2013.

s/ J. DANIEL BREEN
CHIEF UNITED STATES DISTRICT JUDGE